IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE SCHOOL DISTRICT OF PHILADELPHIA : | |
| : | CIVIL ACTION |
| v. : | No. 14-2804 |
| : | |
| SHIRLEY DRUMMOND, *Grandparent and* : | |
| *Guardian of A.H., a Minor* : | |

**NORMA L. SHAPIRO, J.**                                                                       **APRIL 12, 2016**

## MEMORANDUM

Defendant, Shirley Drummond ("Drummond"), filed a due process complaint in the Pennsylvania Office of Dispute Resolution ("ODR"). Drummond's ODR complaint alleged the School District of Philadelphia ("District") violated the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA"), which requires a local education agency to evaluate a disabled child and create an individualized education program ("IEP") providing a free appropriate public education ("FAPE"), 20 U.S.C. § 1414. Drummond's complaint alleged the District's IEP failed to provide a FAPE to her disabled child, A.H.[1] The ODR granted Drummond some relief and, with such relief, held the District's IEP provided a FAPE. The District appealed the ODR decision to the Commonwealth Court of Pennsylvania. Drummond removed the action to this court and filed counterclaims seeking relief beyond that ordered by the ODR.

Pending are both parties' motions for judgment on the administrative record. After review

---

[1] Neither party disputes Drummond, A.H.'s grandmother, is the parent under IDEA, *see* 20 U.S.C. § 1401(23)(C), or that A.H., who has cerebral palsy and is legally blind, is disabled.

of the record, the court holds the ODR erred in (1) denying Drummond an independent educational evaluation ("IEE") of A.H. at District expense, and (2) holding the District's IEP procedurally and substantively valid. The court will order the District to finance an IEE of A.H. and engage in a new, procedurally valid process of creating an IEP. The court will affirm ODR grants of relief, which are based on ODR findings that the District denied a FAPE in some ways.

## I. Legal Standards

A federal district court has jurisdiction to review an administrative adjudication of a dispute under IDEA. 20 U.S.C. § 1415(i)(2)(A) & (3)(A). This action, concerning such review, was properly removed by Drummond from state court. 28 U.S.C. §§ 1331, 1441(a).

Venue is appropriate in this district; the parties reside and the events giving rise to the litigation occurred in Philadelphia. 28 U.S.C. § 1391.

A district court employs "modified *de novo* review" of administrative adjudications of disputes arising under IDEA. *S.H. v. St.-Op. Sch. Dist. of Newark*, 336 F.3d 260, 270 (3d Cir. 2003). Under this standard, "[a] federal district court reviewing the administrative fact finder in the first instance is . . . required to defer to the [administrative hearing officer]'s factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record" and the court "must explain why it does not accept the [administrative hearing officer]'s findings of fact." *Id.* To grant relief or alter relief granted in ODR proceedings, the court must "bas[e] its decision on the preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(C)(iii).

## II. Discussion

IDEA requires public schools receiving federal education funding to provide a FAPE to all disabled children. 20 U.S.C. § 1412(a)(1)(A). A FAPE is a "basic floor of opportunity,"

consisting of access to specialized instruction and related services individually designed to provide educational benefit to the disabled child. *Bd. of Educ. v. Rowley*, 458 U.S. 176, 201 (1982). The "primary vehicle" for providing a FAPE is the IEP, created, after evaluation of the child, through a collaborative process between the school district and the parent. *Honig v. Doe*, 484 U.S. 305, 311-12 (1988).

The court will address Drummond's counterclaims first, as they more broadly address the issue of whether the IEP provided a FAPE.

### A. Drummond's Counterclaims

#### 1. The ODR Failed to Order an Independent Educational Evaluation at District Expense

IDEA guarantees Drummond an independent educational evaluation (IEE) of A.H. at District expense, unless the District proves at a due process hearing that its evaluation was appropriate. 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.502(b)(1) & (2). An evaluation "means [the] procedures used . . . to determine whether a child has a disability . . . ." 34 C.F.R. § 300.15.

Drummond requested an IEE at District expense in her ODR due process complaint. *Administrative Record* (paper no. 13) [hereafter "*Adm. Rec.*"], Pt. 22, 6, ¶ 56. The ODR found the District misdiagnosed A.H. as intellectually disabled ("ID") because it used inadequate testing. *Defendant's Motion for Judgment on the Administrative Record* (paper no. 18) [hereafter "*Drummond Mot.*"], Ex. A (ODR "Final Decision and Order") [hereafter "*ODR Op.*"], 12-14. By finding the District used inadequate testing to arrive at a misdiagnosis, the ODR found the District's evaluation was inappropriate and should have granted Drummond an IEE at District expense.

The ODR, denying an IEE, reasoned, "[r]emoving the ID designation would not alter the conclusion that [A.H.] is IDEA-eligible, and would not change the information and recommendations provided to the IEP team." *ODR Op.*, 16-17. The court agrees with Drummond that IDEA's plain language directs the ODR, in deciding whether to grant an IEE, to consider only whether the District's evaluation was appropriate, not whether an inappropriate evaluation was harmless. *Drummond Mot.*, 44-45. Moreover, the ID diagnosis was not harmless; it affected IEP services. At a minimum, the District discounted Overbrook School for the Blind as a school placement because ID was A.H.'s primary diagnosis. *See, e.g.*, *Adm. Rec.*, Pt. 17, District Ex. 23, 30-31 (email of District psychologist Kathleen Hanley-Lloyd); *id.*, Pt. 10, 463 (testimony of Hanley-Lloyd); *id.*, Pt. 9, 845 (testimony of District physician Dr. Julia Hayes) ("[Overbrook] is not the . . . only place that can provide educational programming for [A.H.] because I would be much more concerned about . . . intellectual disability as [the] primary handicap and that really needed to be addressed first and everything else would be secondary to that.").

The court will order the District to fund an IEE of A.H.

### 2. The ODR Failed to Consider Whether A.H.'s IEP is Procedurally or Substantively Invalid

An IEP fails to provide a FAPE if (1) it is created without following IDEA-mandated procedures; or (2) its substantive services are not reasonably calculated to provide a FAPE. *Rowley*, 458 U.S. at 206-07. The ODR recognized procedural shortcomings but mistakenly held it lacked jurisdiction to review them. It recognized substantive shortcomings but mistakenly held it could not find the IEP substantively invalid if Drummond did not offer evidence of what substantive services would be required.

The District's August 2013 IEP was developed in a procedurally invalid manner. The record is not developed on what substantive services should be provided, mainly because the ODR denied a District-funded IEE, but the ODR has already opined negatively on the IEP's services. The court will not remand this action to the ODR. A new IEP should be created, and if Drummond objects to it, she may file a new ODR due process complaint.

### i. IEP Procedural Violations Denied a FAPE; the ODR Erred in Failing to Consider Them

The ODR listed several procedural violations it *would* have found the District committed: (1) having Drummond sign approval of a draft rather than the final IEP; (2) choosing A.H.'s school after Drummond approved the IEP; and (3) expressing IEP services in minutes per term, which gives providers too much discretion on when to see the child. *ODR Op.*, 6, n.6; *id.* at 21. In other cases, the ODR found these procedural violations denied a FAPE. *Id.*

The ODR listed other alleged procedural violations: (4) the District's holding the IEP team meeting with the attendance "only [of] District administrators and nobody who actually teaches [or would teach A.H.]" and (5) determining service levels before the IEP team meeting. *Id.* at 6, n.5. These alleged violations are supported in the record. The signed, written IEP shows no therapy service providers attended the August 2013 IEP team meeting, and the names of the regular education teacher, special education teacher, local education agency representative, and community agency representative were crossed out and replaced with the names of District administrators who had never met, much less evaluated, A.H. *Adm. Rec.*, Pt. 17, District Ex. 17, 2; *id.*, Pt. 14, 70-73 (testimony of Melody Alegria). Those who evaluated or would later work

5

with A.H. were absent because they "were all on summer vacation." *Id.* at 74-75.[2] The August 2013 IEP "team" worked off an IEP draft created in June in one-on-one meetings between a District psychologist and individual service providers – not in a collaborative, team-based setting. *Id.*, Pt. 10, 471-75, 562-63. Drummond did not attend in June. *Id.*

The ODR held it could not consider whether any of the above procedural violations denied a FAPE because a separate administrative agency, the Bureau of Special Education (BSE), concluded the IEP was valid and the ODR lacks jurisdiction to review or alter BSE findings. *ODR Op.*, 5-6, ¶¶ 22-29 & nn. 5-6; *id.* at 21. This was error: the BSE did not conclude the IEP was valid, and the ODR owed the BSE no deference.

The BSE report addressed only one aspect of the IEP's procedural validity, whether the District missed IDEA-mandated deadlines in developing the IEP. The BSE concluded deadlines were missed but "since the IEP is not required to be implemented until September 9, 2013, there is no educational loss to the Student, and therefore, no compensatory education is indicated." *Adm. Rec.*, Pt. 17, District Ex. 28, 3. The record suggests the BSE assumed, to evaluate timeliness, that the IEP in place on September 9, 2013, was procedurally (and substantively) valid. The BSE report's "Sources of Information" section shows the BSE did not review the IEP and based its decision on conversations with Drummond and one District administrator. *Id.* at 2.

Even if the BSE had assessed every aspect of the IEP's procedural validity, the ODR owed the BSE no deference. Pennsylvania courts hold an administrative agency conducting

---

[2] The IEP team meeting was held during summer vacation, in August, because the District missed IDEA-mandated deadlines, another procedural violation. Drummond consented to a District evaluation of A.H. on January 23, 2013, so IDEA required an IEP by April 23, 2013. *See* 20 U.S.C. § 1414(a)(1)(C) & 34 C.F.R. § 300.323(c).

IDEA due process proceedings should not defer to findings in a BSE report because "the procedure that produced the [report] . . . can in no way be compared to a judicial proceeding" and "is simply not the adversarial-type proceeding of a *fair* hearing that the doctrine of *res judicata* contemplates." *Montour Sch. Dist. v. S.T.*, 805 A.2d 29, 41 (Pa. Commw. Ct. 2002); *accord Derrick F. v. Red Lion Area Sch. Dist.*, 586 F. Supp. 2d 282, 296 (M.D. Pa. 2008).

The accumulation of procedural violations in creating the August 2013 IEP denied A.H. a FAPE. The IEP is the "centerpiece of [IDEA]'s education delivery system for disabled children," *Honig*, 484 U.S. at 311, and "[t]he core of [IDEA] . . . is the cooperative process it establishes between parents and schools," *Schaffer v. Weast*, 546 U.S. 49, 53 (2005). An IEP was drafted in June 2013 without Drummond present and without convening the IEP team members as a group. No District personnel at the August 2013 IEP team meeting, with Drummond present, had met or evaluated A.H. Lack of familiarity with A.H. impeded the team from explaining suggested services or considering suggestions in a manner specific to A.H. At the meeting, Drummond was encouraged to sign an IEP before A.H.'s school placement was determined. This process was not cooperative. The District must create a new IEP in a manner allowing cooperation rather than forced acceptance of a document created by absent District personnel.

### ii. The ODR Erred in Failing to Consider Alleged Substantive Deficiencies in A.H.'s IEP

The ODR found the IEP lacked sufficient nursing services and ordered the District to provide them. Drummond's ODR complaint alleged many other substantive deficiencies not addressed by the ODR.

The ODR hearing officer found the services listed in the August 2013 IEP seemed

"paltry" and "it was only with considerable difficulty that [he] was able to disregard [his] gut reaction to the [IEP] document." *ODR Op.*, 18. Yet, the ODR held the IEP substantively valid because Drummond "put on almost no evidence or testimony concerning the substantive appropriateness of the August IEP" and "[t]he record is . . . nearly silent regarding why th[e] amount [of services the IEP calls for] is inappropriate for [A.H.]." *Id.*

Without an IEE, Drummond could not provide more detail. *See Schaffer*, 546 U.S. at 60-61 ("[Parents] have the right to an 'independent educational evaluation of the[ir] child.' . . . IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition."); *T.P. v. Bryan Cnty. Sch. Dist.*, 792 F.3d 1284, 1293 (11th Cir. 2015) ("The parental right to an IEE is not an end in itself; rather, it serves the purpose of furnishing parents with the independent expertise and information they need to confirm or disagree with an extant, school-district-conducted evaluation."); 34 C.F.R. § 300.502(c) ("the results of the [IEE] . . . [m]ay be presented by any party as evidence at a hearing on a due process complaint."). The ODR erred in not ordering an IEE, then faulting Drummond for a lack of evidence on services.

The ODR also erred in ignoring the evidence about services Drummond did introduce. A.H.'s treating ophthalmologist and optometrist testified at the ODR hearing that vision services in the IEP were insufficient. *Adm. Rec.*, Pt. 9, 758 (testimony of Dr. Graham Quinn); *id.*, Pt. 5, 1816 (testimony of Dr. Sarah Appel). The ODR decision did not mention this testimony.

### iii. The District Must Create a New IEP for A.H.

The ODR erred in declining to review a large number of alleged procedural and substantive IDEA violations. The IEP's procedural violations are many, and the ODR has already opined that the IEP's substance is paltry.

As no IEE was conducted, the record is incomplete on what service levels and school placement would be appropriate for A.H. A district court which "lack[s] the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy'" should "not impos[e its] view of preferable educational methods upon the states." *Rowley*, 458 U.S. at 207.

The court will order the District to create a new IEP, taking into consideration the IEE and following all IDEA-mandated procedures.

### 3. Declaratory Relief

The court will deny Drummond's request for declaratory judgments "direct[ing] the District to discontinue policies and practices that illegally limit the amounts or types of certain services to A.H. and other students with disabilities . . . ." *Drummond Mot.*, 52. Even considering the District's responses to Drummond's requests for admission,[3] the record does not show IDEA violations were caused by District policy. The District's responses denied having such policies, and the ODR hearing testimony does not show most such policies exist. *See, e.g.*, *Adm. Rec.*, Pt. 8, 1252-53 (A.H.'s vision teacher testifying that the most time she spends per month with one student is 90 minutes, not that the District prevents her from spending more than 90 minutes with

---

[3] By a separate order of today's date, the court granted Drummond's motion to expand the record to include these responses.

one child); *id.*, Pt. 7, 1392 (A.H.'s speech and language therapist testifying that the most time she currently spends with any one student is 900 minutes, not that the District prevents her from spending more time); *id.*, Pt. 6, 1621 (A.H.'s occupational therapist testifying "We don't do range of motion activities *per se*[;] if the range of motion exercise is needed[,] we will incorporate that into the program[,]" not that the District prevents or discourages range of motion exercise as occupational therapy).[4]

B. The District's Claims

The District asks the court to reinstate A.H.'s intellectual disability (ID) diagnosis removed by the ODR. *Dist. Mot.*, 2. The ODR found the ID diagnosis was harmless and, therefore, did not deny a FAPE. The court disagrees that the diagnosis was harmless, but the court need not determine whether the diagnosis denied a FAPE, as it is now moot. The District may re-diagnose A.H. as ID, but the court agrees with the ODR it is problematic to do so without testing A.H.'s cognitive functioning. *ODR Op.*, 12 (*citing* the definition of ID in 34 C.F.R. § 300.8(c)(6)[5]); *see also Adm. Rec.*, Pt. 10, 445-53, 529 (testimony of District psychologist on lack of a cognitive assessment).[6]

---

[4] Two alleged District policies are supported by the record – (1) not explicitly noting in the IEP when a "distributed practice model"(*i.e.* services provided by both a therapist and the classroom teacher) will be used, *Drummond Mot.*, Ex. B, Response 6; and (2) failing to train staff not to list IEP services in minutes per term, *id.*, Responses 7 & 8. The parties have not adequately briefed whether either of these practices alone denies a FAPE.

[5] This provision refers to "mental retardation." The term "intellectual disability" (ID) "describe[s] the identical phenomenon." *Hall v. Florida*, 134 S. Ct. 1986, 1990 (2014). The Code of Federal Regulations' definition applies to District evaluations under IDEA. 34 C.F.R. § 300.2.

[6] Also problematic, though not mentioned by the ODR, is the District's cursory review of medical records in making the ID diagnosis. The record suggests District psychologist Kathleen Hanley-Lloyd diagnosed A.H. as ID based in part on A.H.'s prior diagnosis of "chronic static

The District also asks the court to remove (1) extra nursing services ordered by the ODR, and (2) grants of compensatory education (CE) for the time period before these nursing services and a "standing" physical therapy program were implemented.

The District has not proven the extra nursing services and CE grants are not required to provide a FAPE. An IEP failing to ensure a student's safety denies a FAPE. *Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77, 92-94 (2d Cir. 2005). The ODR ordered the extra nursing services, finding one school nurse for 1,350 students did not ensure A.H.'s safety in the event of a "g-tube"-feeding-related emergency. *ODR Op.*, 7, ¶ 37-40; *id.* at 19-20. The ODR's grant of extra nursing services and related CE was not error.

A.H.'s "standing" physical therapy program was listed in the IEP, so failure to implement it denied a FAPE if it was a "substantial or significant provision[] of the IEP, as opposed to a mere *de minimis* failure, such that the disabled child was denied a meaningful educational benefit." *Melissa S. v. Sch. Dist. of Pittsburgh*, 183 F. App'x 184, 187 (3d Cir. 2006). The "standing" program failure was substantial. The ODR found A.H. suffered increased body tightness because of this implementation delay. *ODR Op.*, 21. This increased body tightness prompted a letter from A.H.'s physician to the District, *Adm. Rec.*, Pt. 17, Dist. Ex. 47; in response, the District physical therapist requested a reevaluation of A.H., *id.,* Pt. 6, 1560-61. The

---

encephalopathy," a term Hanley-Lloyd took to mean "a brain disease or brain damage . . . [p]robably because I have seen it in other reports [and] when you see some words that you don't know, you Google it[;] you want to find out what the report is trying to convey to you." *Adm. Rec.*, Pt. 10, 540, 575-78. The testimony of A.H.'s pediatric ophthalmologist, Dr. Graham Quinn, contradicted Hanley-Lloyd's reliance on the encephalopathy diagnosis. *Id.*, Pt. 9, 774 (noting encephalopathy results in a "huge range" in IQ because patients "could have a chronic encephalopathy that affected [their] motor skills and not [their] intellectual skills").

ODR's grant of CE for the delay in implementing the "standing" program was not error.[7]

**III. Conclusion**

The court will order the District to fund an independent educational evaluation (IEE) of A.H. and create a new individualized education program (IEP) for A.H. considering the IEE and following all IDEA-mandated procedures. The court will affirm the ODR's removal of A.H.'s ID diagnosis, grants of compensatory education, and grant of extra nursing services.

Since the spring academic semester is already under way, the new IEP process should be expedited. Unless the parties agree otherwise, all services to which Drummond does not object should be continued until a new IEP is in place.

Unless the parties agree otherwise, attorneys' fees will be determined at a hearing set by order of today's date.

An appropriate order follows.

---

[7] Drummond seeks additional CE for this period of delay, as the ODR partly blamed Drummond for the delay and reduced CE by half. The one-half reduction was not erroneous. Although it is the District's responsibility to implement the IEP, CE may be discounted to account for a reasonable implementation delay. *M.C. v. Cent. Reg'l Sch. Dist*, 81 F.3d 389, 397 (3d Cir. 1996). The ODR properly found some of the delay reasonable because the District believed Drummond was searching for "standing" program equipment which had been provided in A.H.'s early intervention program. *Adm. Rec.*, Pt. 6, 1603-06 (testimony of physical therapist Shu-Ling Tan); *id.*, Pt. 9, 850-52, 864-66 (testimony of Dr. Julia Hayes).